## COMMONWEALTH *vs.* JIMMY LEE FLUELLEN, JR.

Plymouth. November 3, 2009. - April 16, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Controlled Substances. "School Zone" Statute. Joint Enterprise. Practice, Criminal,* Verdict, Confrontation of witnesses, Harmless error. *Evidence,* Joint enterprise, Certificate of drug analysis. *Constitutional Law,* Confrontation of witnesses, Harmless error. *Error, Harmless.*

At the trial of indictments charging the defendant and codefendant, on a theory of joint venture, with distribution of cocaine and distribution of cocaine within a school zone, the acquittal of the codefendant did not require reversal, under the so-called "rule of consistency," of the defendant's convictions at the same trial, where the operation of the principles of joint venture did not transform the character of the underlying offenses into ones that required the united action of multiple persons. [520-523]

At the trial of indictments charging the defendant with distribution of cocaine and distribution of cocaine within a school zone, the evidence was sufficient to permit the jury to find that the defendant, rather than being a mere copurchaser, was a link in the chain of distribution, and to infer that the defendant's hopes for compensation were analogous to the expectation of any middleman in any transaction, i.e., that his efforts would be rewarded [524-525]; however, where the only evidence of the identity of the substance involved in the transaction was in the form of certificates of drug analysis that were admitted without accompanying testimony from the analyst who created the certificates, in violation of the defendant's right to confront witnesses against him, this court could not say that the admission of the certificates was harmless beyond a reasonable doubt [525-527].

INDICTMENTS found and returned in the Superior Court Department on September 29, 2006.

The cases were tried before *Frances A. McIntyre,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Nadell Hill* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

CORDY, J. The defendant, Jimmy Lee Fluellen, Jr., was tried together with Anthony Green on charges of distributing cocaine, G. L. c. 94C, § 32A (*c*), and distributing cocaine within a school zone, G. L. c. 94C, § 32J. After the judge instructed the jury on the law of joint venture, they acquitted Green and convicted the defendant of both charges.

The defendant filed a timely appeal, and we granted his application for direct appellate review principally to consider whether the rule of consistency, a limited doctrine that we have applied to reverse certain types of inconsistent verdicts rendered against codefendants tried together, applies in the circumstances of this case. We hold that it does not. We also consider the defendant's claim that there was insufficient evidence to convict him of distribution because his intent was to purchase the drugs for personal consumption rather than to distribute them. We conclude that the defendant's claim has no merit. Finally, we consider the impact of the admission of certificates of analysis of the drugs recovered in this case. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009); *Griffith* v. *Kentucky*, 479 U.S. 314, 322-323 (1987) (newly declared constitutional rules apply to cases pending on direct appeal). Because we conclude that the introduction of the certificates was not harmless beyond a reasonable doubt, we reverse the defendant's convictions and remand the case for a new trial consistent with this opinion.

*Background.* At trial, the Commonwealth offered the testimony of four witnesses from which the jury could have found the following facts. On June 25, 2006, an undercover police officer, Robert Diliddo, was parked in Brockton in an unmarked vehicle. His aim was to purchase narcotics with two specific twenty dollar bills that could be traced after an arrest. Diliddo made eye contact with the defendant, who approached Diliddo's vehicle and got into the passenger seat. Diliddo told the defendant that he wanted to buy forty dollars' worth of cocaine. The defendant replied that he only had twenty dollars' worth of "crack" cocaine on his person, wrapped in a gum wrapper. However, the defendant offered to contact someone who could provide Diliddo with additional cocaine. After handing Diliddo the cocaine in the gum wrapper, the defendant made a telephone call from Diliddo's cellular telephone. He then

directed Diliddo to drive to a nearby location where the defendant said individuals sold cocaine.

During the drive, Diliddo handed the defendant two twenty dollar bills, holding on to the defendant's twenty dollars' worth of crack cocaine as collateral. When they arrived at the location, the defendant got out of the automobile and approached four males loitering on a corner. Green was in the group. The defendant spoke with Green and the two began haggling. According to Diliddo, it appeared that the defendant was attempting to obtain more cocaine for the forty dollars so that he could keep the surplus for himself. But Diliddo, growing nervous, shouted at the defendant to complete the transaction. The defendant complied, giving Green the money. Green then approached the passenger side of Diliddo's vehicle, leaned in, and spat two pieces of crack cocaine onto the floor of the vehicle.[1] The transaction occurred 348 feet from the Keith School, which is a public school.

The defendant reentered the vehicle, retrieved the cocaine from the floor, and handed it to Diliddo. He also expressed his displeasure at Diliddo's interrupting his negotiation, claiming he could have gotten more cocaine for the money. Diliddo dropped the defendant off where they originally met and returned to him the gum wrapper of cocaine he had retained as collateral.

Diliddo then contacted other officers who proceeded to arrest the defendant, Green, and the three other males. The officers recovered the two twenty dollar bills (which had been previously photocopied by the police) from Green's person. A cellular telephone but no drugs was found during a search of Green. No cocaine or other drug trade paraphernalia were recovered from the defendant. The same was not true for the other three arrested males, from whom the officers recovered cash, cocaine, cellular telephones, and lists of customers' numbers.

During the presentation of its case, the Commonwealth introduced several exhibits, including the pieces of crack cocaine that were spit into the vehicle as well as the additional cocaine recovered from the other males. Certificates of analysis confirm-

---

[1]Another police officer who was surveilling the drug transaction from a nearby location testified that he did not see Anthony Green or any of the other males open the passenger door or lean his head through the window of Diliddo's vehicle.

ing that the drugs were, in fact, cocaine accompanied each of the exhibits. Neither the defendant nor his codefendant objected.

In his closing argument, the prosecutor told the jury that it was for them to determine whether the drugs recovered were cocaine. He made no reference to the certificates. In the judge's final instruction to the jury, she told them that the certificates were prima facie evidence that the drugs were cocaine but that it was for them to determine if the Commonwealth had carried its burden beyond a reasonable doubt.

*Discussion.* 1. *Inconsistent verdicts.* In this case, the Commonwealth sought to establish that the defendant engaged in a joint venture with his codefendant to distribute cocaine. Indeed, the judge instructed the jury to that effect, specifically directing their attention to the defendant and Green as the alleged joint venturers despite evidence that at least three other males had been arrested at the same time as Green.[2] In these circumstances, the defendant argues that his convictions must be reversed because they are inconsistent with the jury's verdict of not guilty with respect to Green. At root, the defendant questions how one can be a joint venturer alone. See *Commonwealth* v. *Benesch*, 290 Mass. 125, 135 (1935) ("one cannot be a conspirator alone").

"That breed of 'inconsistent' verdicts which is not allowed to stand under our cases is small," *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969), and we reverse inconsistent verdicts only in limited circumstances. We have applied the so-called "rule of consistency" to reverse convictions only where three elements are present: "a crime charged that by its nature requires a combination of individuals; a single trial of all the participants in that crime; and an acquittal of all but one of the participants." *Commonwealth* v. *Medeiros*, *ante* 52, 59 (2010). We have not applied the rule of consistency to inconsistent verdicts in joint venture trials (as we have to those in conspiracy trials), because

---

[2]The judge began her instruction on joint venture as follows:

"In this case the Commonwealth has alleged that Mr. Fluellen was in a joint venture with Mr. Green. Mr. Fluellen and Mr. Green, as is their right, deny that claim. But that's what the Commonwealth's theory is. And I'm going on to give you more about these three elements that the Commonwealth must prove in order to establish that Mr. Fluellen was in a joint venture with Mr. Green."

the first element, a crime that requires a combination of individuals, is generally not satisfied.[3,4]

When evaluating whether a crime, by its nature, requires a combination of individuals, we consider whether the crime is defined by "the united act of two or more individuals." *Commonwealth* v. *Medeiros, supra* at 59, quoting *Commonwealth* v. *Slate*, 11 Gray 60, 63 (1858). The "united act" requirement is met when the Commonwealth proves such a combination as an element of the crime charged, either because of the common-law definition of the crime or because the Legislature has required it. See *Commonwealth* v. *Medeiros, supra* at 60 (interpreting aggravated rape provision in G. L. c. 265, § 22 [a]); *Commonwealth* v. *Benesch, supra* (interpreting conspiracy). Where a combination is required, our usual deference to a jury's inconsistent verdicts is outweighed by our concern that "the jury may have fundamentally misunderstood the nature of the crime charged and convicted the defendant even though the Commonwealth did not prove an essential element of the crime beyond a reasonable doubt." *Commonwealth* v. *Medeiros, supra* at 59.

---

[3]For a discussion of the law of inconsistent verdicts in Massachusetts, see *Commonwealth* v. *Medeiros, ante* 52, 57-59 (2010). We have applied the rule of consistency to inconsistent verdicts in conspiracy trials, *Commonwealth* v. *Benesch*, 290 Mass. 125, 135-136 (1935); and in trials for aggravated rape where the statutory element of "joint enterprise" is alleged as the aggravating factor, *Commonwealth* v. *Medeiros, supra* at 60 (interpreting G. L. c. 265, § 22 [a]). At one time, the rule also applied to the crime of riot. See *Commonwealth* v. *Slate*, 11 Gray 60, 63 (1858).

[4]For some time, dictum in *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 235 (1991), suggested that the acquittal of all but one accused joint venturer (where they were tried together) might prove problematic. The Appeals Court echoed that sentiment in *Commonwealth* v. *Wojcik*, 43 Mass. App. Ct. 595, 602 (1997) ("We are not faced here with a circumstance in which a defendant was convicted of a crime based on joint enterprise and other defendants were *acquitted* of similar charges in the same trial" [emphasis in original]). However, applying the rule of consistency to joint venture never surpassed the realm of suggestion. The issue was settled by *Commonwealth* v. *Clements*, 51 Mass. App. Ct. 508, 523 (2001), *S.C.*, 436 Mass. 190 (2002) (review of inconsistent verdicts of joint venturers tried together limited to sufficiency of evidence). Thus, the law of joint venture has always accorded with our statement in *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969), that "the rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury."

Joint venture liability is provided for in G. L. c. 274, § 2, but joint venture is neither a crime nor an element of a crime.[5] Rather, a joint venturer is liable for his participation in the underlying substantive offense. See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466 (2009) ("to find the defendant guilty as a joint venturer, [the jury] must find that the Commonwealth has proved both the elements of the offense and the defendant's knowing participation in the offense"). The operation of the principles of joint venture does not transform the character of the underlying offense into one that requires the united action of multiple persons. No meeting of at least two minds is required to participate in the commission of the crime of drug distribution, charged here, unlike the crime of conspiracy, *Commonwealth* v. *Benesch*, *supra*, nor has the Legislature embedded therein a statutory element of concerted action.[6] See *Commonwealth* v. *Medeiros*, *supra* at 60.

---

[5] "The theory of 'joint venture' liability finds its roots in the concept of accessorial or accomplice liability. While accomplice liability has a common-law origin, Massachusetts, like the Federal government and most States, has enacted statutory provisions, G. L. c. 274, §§ 2 and 3, which declare that a person who aids and abets the commission of a felony is as guilty of that crime as the principal." *Commonwealth* v. *Zanetti*, 454 Mass. 449, 461 (2009), citing *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856-858 (1997).

General Laws c. 274, § 2, states:

> "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the manner provided for the punishment of the principal felon."

[6] In relevant part, G. L. c. 94C, § 32A (*c*), states:

> "Any person who knowingly or intentionally manufactures, distributes, dispenses or possesses with intent to manufacture, distribute or dispense . . . a controlled substance . . . shall be punished by a term of imprisonment in the state prison for not less than two and one-half nor more than ten years or by imprisonment in a jail or house of correction for not less than one nor more than two and one-half years."

In relevant part, G. L. c. 94C, § 32J, states:

> "Any person who violates the provisions of [§ 32A] . . . while in or on, or within one thousand feet of the real property comprising a public or private accredited preschool, accredited headstart facility, elementary, vocational, or secondary school whether or not in session, or within one hundred feet of a public park or playground shall be

Moreover, inconsistent verdicts for joint venturers tried together does not undermine our deference to juries. "A finding of not guilty at a criminal trial can result from any number of factors having nothing to do with the defendant's actual guilt." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982). In this case, the evidence of the defendant's participation in the distribution of cocaine was very strong, but the testimony that it was Green who spit the cocaine into Diliddo's vehicle, while sufficient to support a conviction, was conflicting. See note 1, *supra*; *Commonwealth* v. *Robinson*, 48 Mass. App. Ct. 329, 341 (1999). However, even were the evidence not imbalanced, we would tolerate the inconsistent verdicts because of the jury's inherent power to indulge their compassion and to enter into compromises. See *Commonwealth* v. *Cerveny*, *supra*; *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). Therefore, although there may be some degree of logical inconsistency between the defendant's convictions and his codefendant's acquittals, that alone does not affect the legitimacy of those convictions.[7] As the judge in this case instructed, the jury were to evaluate each indictment separately. If the evidence was sufficient to support the defendant's convictions, they will survive our scrutiny. See *Commonwealth* v. *Scott*, *supra*. See also *Dunn* v. *United States*, 284 U.S. 390, 393-394 (1932).

---

> punished by a term of imprisonment in the state prison for not less than two and one-half nor more than fifteen years or by imprisonment in a jail or house of correction for not less than two nor more than two and one-half years."

[7]Given the nature of joint venture, it is of no consequence that the judge limited the jury's consideration to a joint venture between the defendant and Green. Had the judge not done so, our holding in *Commonwealth* v. *Williams*, 450 Mass. 645, 653-654 (2008), would have made the defendant's argument even more unavailing. There, we held that the Commonwealth was not required to prove the identity of the defendant's joint venturer in order to obtain a conviction. That the defendant was tried together with a codefendant who was acquitted was not problematic because there was sufficient evidence that the defendant had participated in the murder with another, even if that person was not necessarily his codefendant.

Our holding in the *Williams* case is thus consistent with our holding today: although evidence of the participation of multiple individuals in a crime is required to receive a joint venture instruction, that instruction has no bearing on the elements of the underlying substantive crime. See *Commonwealth* v. *Zanetti*, *supra* at 468.

2. *Sufficiency of the evidence of distribution.* The defendant next argues that there was insufficient evidence to convict him of distributing cocaine. We review the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Here, the defendant concedes that he could have been convicted of possession of cocaine, but argues that his role as a purchaser precludes his conviction as a distributor.[8] There is no merit to the defendant's argument. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 604-605 (1992); *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. 455, 461-462, *S.C.*, 430 Mass. 517 (1999).

To convict the defendant of distribution of cocaine, G. L. c. 94C, § 32A (*c*), the Commonwealth was required to prove that the defendant knowingly or intentionally distributed a Class B substance, as defined in G. L. c. 94C, § 31. To convict him of distributing cocaine within a school zone, G. L. c. 94C, § 32J, the Commonwealth had to prove the same elements plus the proximity of the violation to a school. "Distribute" is defined as "to deliver other than by administering or dispensing a controlled substance." G. L. c. 94C, § 1. "Deliver" is further defined as "to transfer, whether by actual or constructive transfer, a controlled substance from one person to another, whether or not there is an agency relationship." *Id.* The defendant's argument that he did not distribute the cocaine in this case cannot survive the application of these definitions. See *Commonwealth* v. *Johnson*, *supra* at 605 ("to purchase the substance, even with friends' money, intending to transfer it to them, constitutes distribution within the meaning of [G. L. c. 94C]"); *Commonwealth* v. *Fernandes*, *supra* at 462 ("defendant facilitated the transaction, acting as a link in the chain of distribution").

The defendant contends, however, that the evidence of his intent in making the purchase was to share it *with* the undercover officer for their personal use. Although we have indorsed the instruction that "[w]here two or more persons simultaneously and jointly acquire possession of a drug for their own use intend-

---

[8]The judge had instructed the jury on the lesser included offense of simple possession.

ing only to share it together, their only crime is simple joint possession," *Commonwealth* v. *Johnson, supra* at 604,[9] that principle is inapplicable to circumstances where a defendant facilitates a transfer of drugs from a seller to a buyer. See *id.* at 605; *Commonwealth* v. *Fernandes, supra*; *Commonwealth* v. *DePalma*, 41 Mass. App. Ct. 798, 804 (1996). That the defendant may have hoped to share in the undercover police officer's bounty is insufficient to establish a shared intention to share in the drugs as a copurchaser. See *Commonwealth* v. *Fernandes, supra* at 461-463. Viewed in the light most favorable to the Commonwealth, the evidence supported the jury's finding that the defendant was a link in the chain of distribution. See *Commonwealth* v. *Latimore, supra*; *Commonwealth* v. *Fernandes, supra*. It was reasonable for the jury to infer that the defendant's hopes for compensation were analogous to the expectation of any middleman in any transaction, that his efforts will be rewarded.[10]

3. *Certificates of analysis.* While the defendant's case was pending on direct appeal, the United States Supreme Court decided *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009), holding that a defendant's right to confront witnesses against him is violated by the introduction of certificates of analysis of narcotics unless the technician who prepared them is available to testify or, if unavailable, the defendant had a prior opportunity for cross-examination. In this case, the Commonwealth introduced similar certificates of analysis as a component of its proof that the substance distributed by the defendant was cocaine. The defendant did not object to the introduction of the certificates. Any objection, however, would likely would have been futile given our express holding in *Commonwealth* v. *Verde*, 444 Mass. 279, 282-285 (2005) (Sixth Amendment to United States Constitution does not prohibit admission of certificates of analysis). Therefore, we inquire whether the admission was harm-

---

[9]The judge had instructed the jury to this effect.

[10]As we explain, *infra*, because the evidence that the substance distributed was, in fact, cocaine was substantiated only by certificates of analysis in violation of the defendant's right to confront any witnesses against him, on retrial, the Commonwealth will, of course, have to prove the composition of the substance in a manner that is both sufficient and conforms to the provisions of the United States Constitution.

less beyond a reasonable doubt. See *Commonwealth* v. *Vasquez, ante* 350, 356 (2010).

Our review presumes that the constitutional violation requires reversal, but an affirmative showing of harmlessness beyond a reasonable doubt by the Commonwealth will preserve the convictions. See *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010), and cases cited. We look beyond evidentiary sufficiency and consider the actual impact of the tainted evidence on the jury. See *Commonwealth* v. *Dagraca*, 447 Mass. 546, 555 (2006). We consider factors including "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt." *Commonwealth* v. *Tyree, supra*, quoting *Commonwealth* v. *Dagraca, supra* at 553. We pay particular attention to whether the Commonwealth's case "radiates from a core of tainted evidence." *Commonwealth* v. *Tyree, supra* at 702. However, we are mindful that the factors just enumerated are not exhaustive, thus we keep a keen watch for other indicia of harm. See *Commonwealth* v. *Vasquez, supra* at 360-361 n.12, citing *Commonwealth* v. *Mahdi*, 388 Mass. 679, 697 (1983).

At the trial, the premise of the defense was that the defendant was a possessor of cocaine, not a distributor. Thus, the defense was constructed around an admission that the substance was cocaine, and the character of the substance was not a contested issue at trial. The prosecutor introduced the certificates when he introduced the drugs themselves. He made no mention of the certificates in his closing argument, merely telling the jury that it was for them to decide whether the substance was cocaine. The judge made a similar admonition, telling the jury that the certificates were prima facie evidence that the substance was cocaine but that they were not dispositive of the issue. See *Commonwealth* v. *Charles, ante* 378, 379 n.1 (2010).

The certificates crystallized the Commonwealth's otherwise entirely circumstantial case. Although the Commonwealth is permitted to rely on circumstantial evidence to prove the identity of the substance, see *Commonwealth* v. *Dawson*, 399 Mass.

465, 467 (1987), our inquiry is whether the certificates had an impact on the jury. *Commonwealth* v. *Vasquez, supra* at 362. Thus, while the jury *could have* inferred the identity of the substance based on the fact that the defendant conveyed to the undercover police officer through his words and conduct that the items he procured were, in fact, rocks of crack cocaine, see *Commonwealth* v. *Alisha A.*, 56 Mass. App. Ct. 311, 313-315 (2002), the certificates made that inference inescapable.

Moreover, there was no other evidence concerning the identity of the substance. See *Commonwealth* v. *Dagraca, supra* at 554 (defendant's admissions were only direct evidence of defendant's residence). As in *Commonwealth* v. *Vasquez, supra* at 364, and cases cited, none of the Commonwealth's witnesses "testified to any expertise or training in chemical analysis, and none was involved in generating the drug certificates used at trial. There was no evidence of 'field tests' performed on the substances . . . [and] [n]one of the officers observed the effects of the substances on anyone ingesting them." None of the police officers testified that, based on his experience, the substance was cocaine. Instead, the identity of the substance was largely presumed. For example, Officer Diliddo told the jury that Green had "spit two, *what turned out to be* twenty dollars' worth of crack cocaine on the passenger side floor of my vehicle" (emphasis added). It is difficult not to conclude that this statement was derivative of his knowledge of the results from the drug testing laboratory.

We have little doubt that the certificates contributed to the jury's verdict. See *Commonwealth* v. *Tyree, supra* at 701. They formed a tainted "core" of evidence from which the rest of the Commonwealth's case radiated. *Id.* at 702. As a consequence, we cannot say that the admission of the certificates was harmless beyond a reasonable doubt.

*Conclusion.* For the reasons stated above, the defendant's convictions are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial consistent with this opinion.

*So ordered.*