### Commonwealth vs. Joshua L. King.

Plymouth. October 3, 2011. - January 19, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses. *Evidence,* Certificate of drug analysis. *Practice, Criminal,* Confrontation of witnesses, Harmless error.

At the trial of an indictment charging the defendant with unlawful distribution of cocaine, as a subsequent offense, the erroneous admission in evidence of a certificate of drug analysis without testimony from the chemical analyst, in violation of the defendant's right to confront witnesses against him, was not harmless beyond a reasonable doubt and required reversal of the defendant's conviction, where the Commonwealth's evidence was not so overwhelming as to nullify the effect of the erroneously admitted certificate, in that the Commonwealth failed to establish a testifying police officer's expertise in the identification of cocaine or to offer any details about a field test that the officer conducted of the substance in question. [356-361]

Indictment found and returned in the Superior Court Department on June 10, 2005.

The case was heard by *Carol S. Ball*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James M. Fox* for the defendant.

*Christine M. Kiggen*, Assistant District Attorney, for the Commonwealth.

Ireland, C.J. In 2008, in a bifurcated, jury-waived trial, the defendant was convicted of unlawful distribution of cocaine, in violation of G. L. c. 94C, § 32A (c), and as a subsequent offense, G. L. c. 94C, § 32A (d).[1] As proof that the substance was cocaine, the Commonwealth introduced a certificate of drug analysis (certificate) and the testimony of a police detective who stated that a field test he had conducted was positive. On

[1]He was found not guilty of a drug offense in a school zone. G. L. c. 94C, § 32J.

appeal, the defendant claimed that, pursuant to the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532, 2542 (2009) (*Melendez-Diaz*), the admission of a certificate without the testimony of the chemical analyst violated his right to confrontation. The Appeals Court affirmed his conviction, holding that the field test and other circumstances rendered the admission of the certificate harmless beyond a reasonable doubt. *Commonwealth* v. *King*, 77 Mass. App. Ct. 189, 192 (2010). We granted the defendant's application for further appellate review and paired this case for argument with *Commonwealth* v. *Billings, post* 362 (2012).[2] Because we conclude that, in the specific circumstances of this case, the Commonwealth's evidence was not so overwhelming as to nullify the effect of the erroneously admitted certificate, the judgment is reversed.

*Facts.* At trial, Detective Robert John Morrissey, Jr., of the Brockton police department testified for the Commonwealth as follows. He had been working in "law enforcement" in Brockton for twelve years and, in January, 2005, was "in the narcotics unit" where he had just begun an undercover investigation of drug dealing at a multifamily apartment building. There was no other testimony concerning his experience and training.

Over the course of two nights, Morrissey had made three drug purchases at the apartment building, involving two apartments. The defendant was not present at any of these transactions. Morrissey returned on the third night "[l]ooking to purchase some cocaine." After he knocked on the door to one apartment, the defendant appeared in the doorway to an apartment which was across the hall, and asked what the detective needed. Morrissey told him that he was looking for "two for thirty," which, Morrissey testified, meant "two twenty dollar rocks for thirty dollars."

The defendant responded by asking questions designed to determine whether Morrissey was a police officer. In response to a question concerning whom he knew in the "area," Morrissey gave the names of individuals from whom he had purchased drugs on the previous two nights. Apparently satisfied, the defend-

[2]The decision in *Commonwealth* v. *Billings*, 77 Mass. App. Ct. 1120 (2010), is an unpublished memorandum and order issued by the Appeals Court pursuant to its rule 1:28.

ant reached into his pocket and removed a clear plastic bag. Morrissey stated that the bag had "about forty smaller plastic bags with rock in there." The defendant handed Morrissey two small bags of "white rock." Once the transaction was complete, at Morrissey's request, the defendant provided a telephone number so that Morrissey could make future purchases.

Morrissey returned to the police station where he conducted a field test on the substance. He testified that the "results . . . were positive" and that he then "turned [the substance] in for further testing." There was no further testimony about the field test. Concerning the substances themselves, at trial, the Commonwealth asked Morrissey only whether he recognized "a cellophane bag with some writing on the outside." Morrissey's only response was to state that it was the "two plastic bags that I purchased from [the defendant]" and stated that they were the bags that were sent for testing. The two bags were admitted in evidence, accompanied by a certificate attesting to their containing cocaine.

The defendant did not testify; his defense was mistaken identity.

*Discussion.* In order to prove distribution of cocaine, the Commonwealth must prove beyond a reasonable doubt that the substance distributed was, in fact, cocaine. *Commonwealth* v. *Vasquez*, 456 Mass. 350, 361 (2010). The Commonwealth does not contest that the introduction of the certificate identifying the substance as cocaine, without the testimony of the chemical analyst, violated the defendant's confrontation rights. *Melendez-Diaz, supra.* Where a certificate is admitted in evidence in violation of the Constitution, our review presumes that a reversal of the defendant's conviction is required unless the Commonwealth makes an affirmative showing that the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Fluellen*, 456 Mass. 517, 526 (2010); *Commonwealth* v. *Vasquez, supra* at 360. "The 'essential question' in analyzing harmlessness beyond a reasonable doubt is 'whether the error had, or might have had, an effect on the [fact finder] and whether the error contributed to or might have contributed to the [findings of guilty].' " *Commonwealth* v. *Vasquez, supra,* quoting *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990). "The standard of harmlessness beyond a reason-

able doubt is a stringent one . . . ." *Commonwealth* v. *Vasquez, supra* at 361, quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 (1987).

Proof that a substance is a particular drug "may be made by circumstantial evidence." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). However, the Commonwealth must show that other properly admitted evidence of guilt was "so powerful as to 'nullify any effect' " that the improperly admitted evidence "might have had" on the fact finder or the findings. *Commonwealth* v. *Vasquez, supra* at 362, quoting *Commonwealth* v. *Tyree*, 455 Mass. 676, 704 n.44 (2010).

We give little weight to a defendant's decision not to challenge the certificate. See *Commonwealth* v. *Vasquez, supra* at 355, 367-368. In addition, "[t]he Commonwealth's burden of proving every element of its case cannot be transferred to the defendant because of his counsel's choice of defense." *Id.* at 367-368, citing *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986).

Here, the Commonwealth asserts that there was ample circumstantial evidence to overcome the prejudice caused by the introduction of the certificate. Relying on the factors established by this court for assessing whether an error was harmless beyond a reasonable doubt, *Commonwealth* v. *Tyree, supra* at 701,[3] the Commonwealth asserts that the certificate was cumulative of its other evidence, i.e., Morrissey's testimony which the Commonwealth characterizes as "expert," the field test he conducted, and the defendant's behavior. It also argues that the admission of the certificate bore no relation to the defense of mistaken identity; that the judge made no reference to the certificate during the trial and neither party made reference to it in closing argument (neither side presented an opening statement). In support of its argument, the Commonwealth asserts that this case is controlled by our decision in *Commonwealth* v. *Connolly*, 454 Mass. 808, 829-832 (2009) (admission of certificate of drug analysis harm-

___

[3]The factors include: the weight or quantum of proper evidence of guilt; the importance of the tainted evidence to the prosecutor's case; the character of the tainted evidence as merely cumulative of the valid evidence or as independently probative; the relationship between the improper evidence and the premise of the defense; the frequency of reference to that evidence; and the identity of the party introducing the evidence. *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010).

less beyond reasonable doubt where there was expert testimony and field tests were conducted on cocaine).[4] We do not agree.

In *Commonwealth* v. *Connolly, supra* at 811, 831, we recited the following facts in our determination that the admission of certificates of drug analysis was harmless beyond a reasonable doubt: the defendant had been the subject of an investigation for more than one year; there were controlled drug purchases by "multiple confidential informants" as well as by an undercover police officer to whom the defendant identified the substance he sold as "crack" cocaine; an officer with twenty-five years' experience in narcotics investigations field tested the substances after each purchase and each time it tested positive for cocaine; a second officer, who had approximately seventeen years' experience in narcotics investigations and had investigated "high hundreds" of cocaine distribution cases, found cocaine in the defendant's vehicle and conducted a field test on it with positive results; and a third officer with over thirteen years' experience conducting drug searches with a narcotics detection canine not only testified that the substance in the vehicle appeared to him to be cocaine, but the canine had been used to find the cocaine in the vehicle. *Id.* at 811, 831. The facts in the *Connolly* case are distinguishable from the facts of this case.

As an initial matter, we reject the Commonwealth's assertion that, like the *Connolly* case, Morrissey was an "expert" in the identification of cocaine and, therefore, his opinion was substantial circumstantial evidence as to the nature of the substance. At trial, Morrissey only stated that he had been in law enforcement for twelve years and was in the narcotics unit at the time of the investigation. He was not asked about his specific training in the identification of cocaine; indeed, he was not asked about any specific training or experience in narcotics investigation. He gave no objective criteria on which he based his

---

[4]To support its argument that testimony from an experienced officer and field test was sufficient to identify the substances as narcotics beyond a reasonable doubt, the Commonwealth also relies on *Commonwealth* v. *Zapata*, 61 Mass. App. Ct. 1109 (2004), an unpublished memorandum and order issued by the Appeals Court pursuant to its rule 1:28. The case is not apt because the issue was the sufficiency of the evidence and not whether a constitutional error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Nelson*, 460 Mass. 564, 573-574 (2011).

statement that the substance was "rock," which we assume to be "crack" cocaine, although there was no testimony to that effect. See *Commonwealth* v. *Nelson*, 460 Mass. 564, 577 (2011) (admission of certificate of drug analysis identifying marijuana not harmless beyond reasonable doubt where neither investigating officer nor drug distribution expert identified substance based on training and experience).

Here, the only evidence regarding the chemical composition of the substance, other than the certificate, was Morrissey's cursory testimony that the substance had tested "positive" (although he did not even state what it tested positive for) after which it was sent "for further testing." The Commonwealth did not present any evidence concerning what kind of field test kit Morrissey used or whether Morrissey was trained in its proper use. Indeed, Morrissey's testimony reasonably could be understood either as a statement that he relied on the laboratory test to identify the substance or as a recitation of the protocol the Brockton police had in place because they were not confident that the results of a field test were accurate.[5]

We conclude that the Commonwealth's failure to establish Morrissey's expertise or to offer any details about the field test that he conducted reveals the extent to which it was relying on the certificate to prove that the substance was cocaine, an understandable decision during a trial that occurred prior to the Court's decision in *Melendez-Diaz*.

The Commonwealth next points to the defendant's behavior as further circumstantial evidence that would help nullify the effects of the certificate, claiming: that the defendant recognized that "rock" was slang for "crack" cocaine and understood the meaning of Morrissey's "street" jargon when he requested "two for thirty"; the defendant had a bag filled with forty smaller bags of white substance in his pocket; he questioned

---

[5]The Commonwealth's argument that the field test here was admitted in evidence for its "full probative value" adds nothing. *Commonwealth* v. *Fernandez*, 458 Mass. 137, 151 n.20 (2010) ("no appellate case from Massachusetts has accepted as reliable field test results, regardless of the purpose for which they are offered"). In the *Fernandez* case, we state that "[f]ield tests [are] 'presumptive identification' typically . . . followed by laboratory tests . . . [using] the 'gas chromatography-mass spectrometry test.' " *Id.* at 149 n.17, quoting National Research Council, Strengthening Forensic Science in the United States, A Path Forward 134-135 (2009).

Morrissey as a "security measure[]"; and he gave Morrissey his telephone number. The Commonwealth further argues that the defendant's agreement to sell the "rocks" to Morrissey was a "substantive admission" that the substance was cocaine.

We conclude that this evidence leads to the conclusion that the defendant took part in what appeared to be a drug *transaction* but does not go to whether the substance was, in fact, cocaine. Indeed, the defendant may have taken these measures even if the substance was not cocaine, because he could have been charged with selling a counterfeit narcotic. See G. L. c. 94C, § 32G. There also was no evidence introduced that the telephone number the defendant gave Morrissey was genuine, which is particularly relevant where the defendant offered a telephone number only after Morrissey requested it. There was no testimony that the defendant made any admission about the chemical composition of the substance and there was no stipulation.[6] Cf. *Commonwealth* v. *Fluellen*, 456 Mass. 517, 526-527 (2010) (although premise of defense involved admission that substance was cocaine, admission of certificate not harmless beyond reasonable doubt); *Commonwealth* v. *Muniz*, 456 Mass. 166, 173-174 n.7 (2010) (absent stipulation, whether substance was cocaine essential element of crime that Commonwealth must prove beyond reasonable doubt).

The Commonwealth also argues that the certificate had no relationship to the defense of mistaken identity. Although a factor in determining whether the admission of the certificate was harmless beyond a reasonable doubt, the nature of the defense was not consequential in this case.[7] See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 367-368 (2010), citing *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986) (Commonwealth's burden of proving every element of case cannot be transferred to defendant because of counsel's choice of defense).

[6]We do not agree with the Commonwealth that defense counsel admitted in closing argument there was a "drug sale" by this defendant. In any event, as noted above, this is not a determining factor.

[7]The fact that the Commonwealth did not mention the certificate in its closing argument is not a determining factor. See *Commonwealth* v. *Fluellen*, 456 Mass. 517, 526-527 (2010) (admission of certificate of drug analysis not harmless beyond reasonable doubt even though prosecutor did not mention certificate in closing and premise of defense was that substance was cocaine).

Here, the evidence of the chemical content of the substance was not so powerful as to nullify *any* effect of the erroneously admitted certificate. See *Commonwealth* v. *Nelson, supra* (contrasting issue of sufficiency of evidence with issue whether certificate harmless beyond reasonable doubt). There was no admission, no testimony concerning Morrissey's expertise in any aspect of narcotics investigation or identification, cursory testimony concerning the result of the field test that was sent for "further testing," and the defendant's behavior indicated only that a drug transaction appeared to have taken place; therefore, we cannot say that admission of the certificate was harmless beyond a reasonable doubt. *Commonwealth* v. *Fluellen, supra* at 527 (where certificates "formed a tainted 'core' of evidence from which the rest of the Commonwealth's case radiated" admission not harmless beyond reasonable doubt).

*Conclusion.* For the reasons set forth above, the judgment is reversed, the findings set aside and the case is remanded for a new trial.

*So ordered.*