## COMMONWEALTH *vs.* ADOLFO MARTE.

No. 09-P-776.

Bristol. January 6, 2011. - August 15, 2013.

Present: BERRY, WOLOHOJIAN, & HANLON, JJ.

*Controlled Substances. Constitutional Law,* Confrontation of witnesses, Harmless error. *Practice, Criminal,* Confrontation of witnesses, Harmless error. *Evidence,* Certificate of drug analysis, Field Drug Test, Expert opinion. *Witness,* Expert.

At the trial of indictments charging trafficking in cocaine, the totality of the evidence, including but not limited to a positive field test for cocaine, was sufficient to render the erroneous admission of certificates of drug analysis unaccompanied by trial testimony from the chemical analyst harmless error with respect to substances seized during four controlled purchases by police; however, the Commonwealth's evidence did not overcome such error with respect a substance seized during a search of the defendant's apartment, where little evidence would have established that the composition of the substance was cocaine, except for the erroneously admitted certificate of drug analysis. [139-145]

INDICTMENTS found and returned in the Superior Court Department on December 1, 2006.

The cases were tried before *E. Susan Garsh,* J.

*William J. Keefe* for the defendant.

*Natalie S. Monroe,* Assistant Attorney General (*Dean A. Mazzone,* Assistant Attorney General, with her) for the Commonwealth.

BERRY, J. This case involves a series of four controlled cocaine "buys" by a State trooper, acting undercover, from a man known as "Carlos" — but later identified as the defendant, Adolfo Marte. Based on these controlled buys, a jury convicted the defendant of four counts of trafficking in cocaine in excess of twenty-eight grams. The defendant was also convicted of a single count of trafficking in cocaine in excess of 200 grams

based on seizures pursuant to a search warrant executed at the defendant's apartment. See G. L. c. 94C, § 32E(*b*)(4). The search warrant was obtained on the same day as the defendant's arrest, following the fourth controlled buy of cocaine.

At trial, over the defendant's objection, the Commonwealth introduced certificates of drug analysis, without trial testimony from the chemical analyst, to support each of the five trafficking charges. This was constitutional error violating confrontation rights. See *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 310-311 (2009). The principal issue in this appeal[1] is whether the Commonwealth's evidence — including field testing of the cocaine bought in the controlled buys and lack of field testing of the cocaine seized in the apartment — rendered the error in the admission of the drug certificates harmless beyond a reasonable doubt. See generally *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352, 360-362 (2010).[2]

For the reasons that follow, we affirm the four convictions

[1] We stayed this appeal pending the Supreme Judicial Court's decisions in *Commonwealth* v. *King*, 461 Mass. 354 (2012), and *Commonwealth* v. *Billings*, 461 Mass. 362 (2012), both of which were being considered on further appellate review from *Commonwealth* v. *King*, 77 Mass. App. Ct. 189 (2010), and *Commonwealth* v. *Billings*, 77 Mass. App. Ct. 1120 (2010), respectively. The *King* and *Billings* cases address the effects and limitations of positive field test results in analyzing harmless error in respect to erroneously admitted drug certificates. We discuss these cases in more detail in part 3, *infra*.

[2] This case has a lengthy and tortuous procedural history. The defendant's direct appeal was initially stayed pending the filing of a motion for a new trial. The defendant was ordered to file status reports concerning the new trial motion. Those status reports were not filed, and the stay in the direct appeal was vacated. Then, the defendant failed timely to file his appellant's brief, and the direct appeal was dismissed under this court's standing order for lack of prosecution of the appeal. Later, the direct appeal was reinstated, with a notation that any appeal from the new trial motion proceeding would be consolidated with the direct appeal.

The motion for a new trial was ultimately denied. The defendant did not file a timely notice of appeal from that denial. This court granted the defendant leave to file a late notice of appeal from the new trial motion denial. But, then, a Superior Court judge declined to accept for filing the defendant's late notice of appeal.

The Commonwealth contends that the appeal from the denial of the motion for new trial is not properly before us. We need not dwell on this aspect of the procedural morass because the defendant's direct appeal is clearly before us. And, in that direct appeal, the defendant is entitled to review under the harmless error standard regarding the admission of the drug certificates according

based on the controlled buys. However, the conviction based on the seizure from the defendant's apartment cannot stand.

1. *Background.* The following is a brief summary of the trial evidence. The circumstances underlying each of the controlled buys were, reduced to essential acts, nearly identical. Prior to each controlled buy, Trooper Daniel Tucker would contact the defendant (who used the name "Carlos") requesting to purchase two ounces of cocaine. The defendant set a price of $2,200 for each two-ounce sale. The defendant would instruct Trooper Tucker to proceed to the parking lot of a nearby Friendly's restaurant. During the first and second controlled buys, an associate of the defendant known as "Nieves" arrived by car at the Friendly's parking lot and delivered to Trooper Tucker a plastic bag containing approximately two ounces of a white powdery substance. After the second buy, the defendant, in a telephone conversation, inquired whether the trooper was satisfied with the quality of the substance delivered and boasted, "You never have to worry about my packages, I've been around a long time." The defendant himself made the third delivery. After the trooper's call to the defendant, another man known as "Andino" made the fourth delivery at the Friendly's, but shortly thereafter was joined by the defendant.

After each controlled buy, Trooper Tucker immediately performed a field test on the purchased substance. Each of the four field tests indicated the presumptive presence of cocaine. As previously noted, the defendant was arrested after Trooper Tucker made the fourth and final controlled buy. That same day, police executed a search warrant at the defendant's apartment and seized a large quantity of a white powdery substance from a secret compartment, what the police expert characterized as a

to *Melendez-Diaz*, because his direct appeal was pending when the United States Supreme Court decided *Melendez-Diaz* in 2009. Indeed, the defendant's brief — albeit written about the new trial motion — is, in its entirety, directed to the question of the admission of the drug certificates, and whether that error was harmless. Similarly, the Commonwealth's brief is focused exclusively on these *Melendez-Diaz* issues. In ruling on the defendant's new trial motion, the Superior Court judge also analyzed the *Melendez-Diaz* questions presented. Because the *Melendez-Diaz* issue underlying the motion for a new trial is the same as the issue presented in the direct appeal, that issue is squarely before us for review.

drug "hide," under the kitchen sink.[3] Also seized were two scales and two boxes of plastic sandwich bags from the kitchen area of the apartment. Field tests were not performed on the substances found at the defendant's apartment.

2. *Standard of review.* "The 'essential question' in analyzing harmlessness beyond a reasonable doubt is 'whether the error had, or might have had, an effect on the [fact finder] and whether the error contributed to or might have contributed to the [findings of guilty].' " *Vasquez,* 456 Mass. at 360, quoting from *Commonwealth* v. *Perrot,* 407 Mass. 539, 549 (1990). "[I]t is not enough for the Commonwealth to demonstrate that its other, properly admitted evidence was 'sufficient' to convict the defendant or that the inadmissible evidence was 'consistent' with the admissible evidence." *Commonwealth* v. *Tyree,* 455 Mass. 676, 701 (2010), quoting from *Commonwealth* v. *Dagraca,* 447 Mass. 546, 554-555 (2006). "Rather, to establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to nullify any effect' that the improperly admitted evidence 'might have had' on the fact finder or the findings." *Vasquez, supra* at 362, quoting from *Tyree, supra* at 704 n.44.

Against this backdrop, we conclude that the totality of the Commonwealth's evidence, including but not limited to the positive field test for cocaine, was sufficient to render the admission of the certificates of drug analysis harmless error with respect to the four controlled buys of cocaine delivered to Trooper Tucker, which were the predicates for the four convictions for trafficking in cocaine in excess of twenty-eight grams. However, our review of the trial record, as described in part 4, *infra,* reflects little evidence which would have established that the composition of the substance seized from the apartment was cocaine, except for the erroneously admitted certificate of analysis. Hence, we conclude the Commonwealth's evidence did not overcome the *Melendez-Diaz* error with respect to the cocaine seized in the apartment — which was the predicate for the conviction for trafficking in excess of 200 grams.

3. *The controlled buys and the four trafficking convictions*

---

[3]The defendant does not challenge the validity of the search warrant.

*therefor.* With respect to the controlled buys, our analysis begins with whether the error arising out of the admission of the drug certificates was harmless by considering the significance of the fact that immediately following each buy, Trooper Tucker conducted an on-site field test. The trooper's testimony was clear and direct that he personally conducted each field test and that each of the white substances purchased in the controlled buys tested positive for the presumptive presence of cocaine. At trial, the trooper described in simple terms how he performed the field test. He also described what the result looked like after a series of vials were broken open and applied to the seized substance, yielding colors which changed to reflect the presence of cocaine — a testing procedure, as described in the direct examination, which could have been, of course, further probed in cross-examination. Trooper Tucker had past experience in conducting such field tests and had participated in approximately one hundred cocaine seizures during his eight years on the State police force, including the Cape Cod drug task force, where he was working at the time of the events in this case and conducted the field tests at issue. As noted, his testimony concerning the field tests was open to cross-examination confrontation by the defendant. Accord *Commonwealth v. Connolly,* 454 Mass. 808, 831-832 (2009) (field-testing officers had many years of experience in narcotics investigation and were available for cross-examination at trial; error harmless). Cf. *Commonwealth* v. *Rodriguez,* 75 Mass. App. Ct. 235, 243 (2009) ("[S]ome of the substances were field tested and found to be cocaine. [The detective] so testified on cross-examination without objection").

Since 2009, when the *Connolly* case was decided, there have been significant case developments involving field testing that further calibrate and refine the weight to be given field testing in reviewing whether the constitutionally erroneous admission of drug certificates of analysis is harmless beyond a reasonable doubt. Among the leading post-*Connolly* cases are *Commonwealth* v. *Fernandez,* 458 Mass. 137, 151-153 (2010); *Commonwealth* v. *King,* 461 Mass. 354, 357-361 (2012); and *Commonwealth* v. *Billings,* 461 Mass. 362, 364-365 (2012). The framework of these cases, decided in the wake of *Connolly,* is double edged, imposing more exacting scrutiny of the founda-

tional evidence required concerning field testing, but endorsing, as did the *Connolly* case, the inclusion of a positive field test in the harmless error equation — so long as such field tests are properly conducted, and so long as the testing is supported by background foundational evidence.

The post-*Connolly* field test framework may be further detailed as follows. On one side, the evidentiary standards for properly admitted field tests are heightened. In this respect, the post-*Connolly* cases make clear that, where the trial evidence concerning a field test is not demonstrated to have the requisite foundation — which includes the experience of the officer(s) conducting the test, the methodology of the testing, and definitive identification of the substance, i.e., as cocaine, heroin, or another controlled substance — the field test yields no real offset to the constitutional error in the admission of the drug certificate of analysis. See, e.g., *Commonwealth* v. *Nelson*, 460 Mass. 564, 577 (2011) (admission of certificate of drug analysis identifying marijuana not harmless beyond reasonable doubt where neither investigating officer nor drug distribution expert identified substance based on training and experience); *Billings, supra* (error in drug certificate admission not harmless where officer conducting field test did not have requisite experience, and where result of field test regarding composition of substance was left unidentified in officer's trial testimony). See generally *Commonwealth* v. *Fernandez*, 458 Mass. 137 (2010) (admission of certificates of analysis not harmless beyond reasonable doubt).

However, on the other side, these field testing cases reaffirm the general proposition (as recognized in *Connolly*),[4] that a presumptively positive field test, with proper foundation, may be

---

[4]To illustrate this point, in *Commonwealth* v. *King, supra*, the Supreme Judicial Court held that the field test evidence was flawed and could not be considered in the harmless error analysis. But, importantly, the court went on to reaffirm the *Connolly* factors when the court noted, "we recited the following facts [in the *Connolly* case] in our determination that the admission of certificates of drug analysis was harmless beyond a reasonable doubt: the defendant had been the subject of an investigation for more than one year; there were controlled drug purchases by 'multiple confidential informants' as well as by an undercover police officer to whom the defendant identified the substance he sold as 'crack' cocaine; an officer with twenty-five years' experience in narcotics investigations field tested the substances after each purchase

of persuasive weight. Aggregated with other corroborative and circumstantial evidence that identifies substance composition (apart from the certificate admitted), the *Melendez-Diaz* error may be overridden and render that error harmless. See *Fernandez, supra* at 150 n.4. Restated another way, a positive field test that affirms the presumptive presence of a controlled substance, which does not stand alone,[5] but rather which is buttressed by other incriminatory evidence and expert drug testimony, which also tends to prove the substance composition, is to be tallied up as a whole and may render the Commonwealth's evidence "so powerful as to 'nullify any effect' that the improperly admitted evidence 'might have had' on the fact finder or the findings." *Vasquez,* 456 Mass. at 362, quoting from *Tyree,* 455 Mass. at 704 n.44.

Buttressing evidence to support the composition identification in a presumptively positive field test case may include, but is not limited to, testimony and other evidence regarding: the type of field test used; the method of testing; whether the testing officer had received training in drug investigations, particularly in field testing drugs; any incriminatory admission by a defendant as to what the substance is (cocaine, heroin, etc.); and any other direct or circumstantial evidence relevant and tending to demonstrate the chemical composition of the substances at issue. See note 4, *supra.* This evidentiary construct in which a positive field test is buttressed by other corroborative, circumstantial evidence is in accord with the law that "[p]roof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence." *Commonwealth* v.

---

and each time it tested positive for cocaine; a second officer, who had approximately seventeen years' experience in narcotics investigations and had investigated 'high hundreds' of cocaine distribution cases, found cocaine in the defendant's vehicle and conducted a field test on it with positive results; and a third officer with over thirteen years' experience conducting drug searches with a narcotics detection canine not only testified that the substance in the vehicle appeared to him to be cocaine, but the canine had been used to find the cocaine in the vehicle." *King,* 461 Mass. at 358.

[5]The cases indicate that a positive field test that affirms the presumptive presence of a controlled substance, does not, *standing alone* (without other corroborative evidence), move the bar so that a constitutional *Melendez-Diaz* error in the admission of a drug certificate of analysis is trumped.

*Dawson*, 399 Mass. 465, 467 (1987). See *Commonwealth* v. *Charles*, 456 Mass. 378, 381-382 (2010).

We turn to the circumstantial evidence in this case, which, in our view, was strongly corroborative and fully buttressed Trooper Tucker's clear and direct testimony,[6] reporting positive cocaine results in the field tests performed on the substance purchased in the controlled buys. First, the entire pattern of, and repetitive manner of, the drug sales by the defendant — that is, telephone call by the undercover trooper to the defendant asking to buy two ounces of cocaine, price of $2,200 set by the defendant, and telephone calls immediately followed by delivery by car of the negotiated-for cocaine at the off-site restaurant designated by the defendant — were probative that the substance the defendant was selling to the undercover trooper was cocaine. Second, corroborative that the substance delivered was cocaine were the defendant's incriminatory admissions following one transaction, when the defendant boasted to the trooper, "[Y]ou never have to worry about my package, I've been around a long time." Third, the drug evidence expert, Sergeant Brooks, testified that the sale price of $2,200 for each of the two-ounce purchases corresponded precisely with the market price of cocaine at the time. Fourth, Brooks also testified that the manner of packaging and sale of the white substance collected in the small, clear plastic bags — packaging which was similar in each of the four controlled buys — is typical of street-level cocaine distribution. All of this evidence had independent bases and corroborates the field test evidence that the substance was cocaine, apart from the admitted drug certificates of analysis admitted in conflict with *Melandez-Diaz*.

Related to proving the substance purchased as cocaine, it was also the Commonwealth's burden to establish that the seized substance amounted to more than twenty-eight grams for each

---

[6]While *Commonwealth* v. *Fernandez*, 458 Mass. at 149-150, speaks of instances in which the defense may seek to invoke the protocol of *Commonwealth* v. *Lanigan*, 419 Mass. 15, 26 (1994), and request a hearing to challenge the manner in which certain field tests were conducted, or the particular test kit used, that issue is not present in this appeal, there having been no *Lanigan* challenge raised below. Cf. *Fernandez, supra* (rejecting appellate claim concerning potential *Lanigan* hearing directed to field testing, where no objection to field test raised until day of trial commencement).

of the controlled buys. Here, the substances themselves were admitted in evidence for jury review of volume and heft. Furthermore, the quantity of cocaine in each bag amounted to approximately two ounces — i.e., approximately twice the weight required by the relevant twenty-eight gram subsection of the trafficking statute, so there was a particularly large amount for the jury to review.

4. *Substance seized from the apartment hide.* As noted, the police seized two plastic bags containing white rock powder from the hide beneath the kitchen sink in the defendant's apartment. The drug certificate indicated that the white rock was cocaine, weighed 465.18 grams, and was seventy-two percent pure cocaine. This was the basis for the defendant's conviction for trafficking in excess of 200 grams of cocaine. However, aside from this erroneously admitted drug certificate, there was not very much evidence bearing on the composition of the substance.

As previously noted, no field tests were performed on the substances seized from the apartment, including this large white block. See *Vasquez*, 456 Mass. at 364-366 (noting lack of field testing; admission of drug certificates not harmless beyond reasonable doubt); *Commonwealth* v. *Fluellen*, 456 Mass. 517, 527 (2010) (same). In addition, unlike the four controlled buys, there was no valuation evidence concerning potential value or sale price on the market price of cocaine. Nor was there anything like the defendant's incriminatory admission about the "package" and its quality.

Indeed, apart from the erroneously admitted drug certificate, the Commonwealth's trial evidence devolved to Sergeant Brook's expert opinions about the manner and means of drug dealing generally. Reduced to essentials, this drug expert opinion evidence was to the effect that the defendant's sparsely furnished apartment appeared to be a "stash pad" (as, to which the sergeant opined, is commonly used by drug dealers), that the sink compartment appeared to be a "hide" (again, in the sergeant's opinion, such as might be of the type commonly used by drug dealers to conceal drugs or proceeds), and that there were two scales and plastic bags (which, again, would be such as those used by drug dealers). These pieces of expert opinion, while clearly relevant

to provide information on how the drug trade works, did *not* serve to identity the seized substance itself as cocaine. Cf. *Vasquez, supra* at 366-367 (rubber bands, cash, sandwich bags, and walkie-talkie all relevant on the issue of distribution, but not on chemical composition).

5. *Conclusion.* Based on the foregoing, the judgments on the four charges of trafficking in excess of twenty-eight grams of cocaine are affirmed. The judgment on the charge of trafficking in excess of 200 grams of cocaine is reversed, and the verdict is set aside.[7] The case is remanded to the Superior court for further proceedings as may be appropriate and consistent with this opinion.[8]

*So ordered.*

---

[7]On the conviction of trafficking in excess of 200 grams of cocaine, the defendant was sentenced to a term of from fifteen to seventeen years in State prison. On the convictions of trafficking in excess of twenty-eight grams of cocaine, the defendant received four concurrent sentences of from five years to five years and one day, each of those sentences to be served concurrently with the sentence for trafficking in excess of 200 grams.

[8]In denying the new trial motion, the Superior Court judge, who was the trial judge, found no basis for granting a new trial for any of the five convictions because of error in admission of the drug certificates. However, in affirming the conviction for trafficking in excess of 200 grams, the judge noted that it was a "closer question" than that presented by the four controlled buys and the underlying convictions for trafficking in cocaine in excess of twenty-eight grams. Since the consideration of this case, it has been determined that *Melendez-Diaz* does not apply retroactively to new trial proceedings. See *Commonwealth* v. *Melendez-Diaz*, 460 Mass. 238, 239-240 (2011). But, this new trial motion was pending and heard while the direct appeal was still open and not final — another procedural nuance, which we need not reach because we review this case and reach our disposition on the direct appeal. See note 2, *supra*. As further referenced in note 2, it is questionable whether the defendant's appeal from the denial of his new trial motion was properly preserved for appeal, given the late notice of appeal. In any event, because the *Melendez-Diaz* issues overlap, were the defendant's appeal before us, we would affirm the denial of the new trial motion on the trafficking counts that arise from the four controlled buys. In contrast, our reversal of the conviction of trafficking in excess of 200 grams of cocaine, the conviction arising out of the apartment seizure, in effect, renders the denial of the new trial motion on that trafficking count moot.