COMMONWEALTH *vs.* JOSHUA L. KING.

No. 09-P-228.

Plymouth. April 6, 2010. - July 2, 2010.

Present: GREEN, BROWN, & GRAINGER, JJ.

Further appellate review granted, 458 Mass. 1106 (2010).

*Controlled Substances. Evidence,* Certificate of drug analysis. *Constitutional Law,* Confrontation of witnesses, Harmless error. *Practice, Criminal,* Confrontation of witnesses, Harmless error.

At the trial of an indictment charging distribution of cocaine, the admission in evidence of a certificate of drug analysis, without accompanying testimony from the laboratory analyst who produced it, in violation of the defendant's constitutional right to confront witnesses against him, was harmless beyond a reasonable doubt, where the Commonwealth's evidence, which included testimony from a police detective that he field-tested the substance in question following the transaction's completion and obtained a positive result for cocaine, was so overwhelming as to nullify any effect of the certificate's admission in evidence. [190-192] BROWN, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on June 10, 2005.

The case was heard by *Carol S. Ball,* J.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

*James M. Fox* for the defendant.

GRAINGER, J. After a jury-waived trial, the defendant, Joshua L. King, was found guilty of distribution of a class B substance (cocaine), G. L. c. 94C, § 32A(*c*), as a subsequent offense, G. L. c. 94C, § 32A(*d*). He appeals, arguing that the trial judge erred in admitting a drug certificate in evidence without live testimony in violation of his constitutional right to confrontation under the Sixth Amendment to the United States Constitution and that the error was not harmless beyond a reasonable doubt. We affirm.

*Background.* We briefly summarize the evidence presented at

trial. Detective Robert Morrissey testified that, on the evening of January 8, 2005, he was operating undercover while investigating drug dealing at 102 Pleasant Street in Brockton. Upon entering the premises, Detective Morrissey knocked on the door to apartment one. The defendant appeared in the doorway of apartment four, located across the hall, and inquired as to what Detective Morrissey needed.

The detective requested two rocks of "crack" cocaine for thirty dollars.[1] After asking several questions designed to determine whether Detective Morrissey was a police officer, the defendant reached into his pocket and removed a clear plastic bag. The bag appeared to contain approximately forty smaller bags holding white rocks that Detective Morrissey believed to be crack cocaine. The two parties completed their transaction and, at Detective Morrissey's request, the defendant provided his telephone number for future purchases. Detective Morrissey subsequently returned to the Brockton police department and conducted a field test, obtaining a positive test for crack cocaine. Officers executed a search warrant for apartment four the next day and arrested the defendant, recovering his cellular telephone from the premises.

The defense theory at trial was that Detective Morrissey misidentified the defendant, who happened to be present in apartment number four at the time the search warrant was executed but did not rent or own the apartment, as the individual from whom he purchased crack cocaine on the previous day.

*Discussion.* During the trial, the Commonwealth introduced a drug certificate to prove that the substance exchanged in the controlled buy was, in fact, cocaine. In light of the decision in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), the admission of the drug certificate without testimony from the analyst who performed the test violated the defendant's right to confront witnesses under the Sixth Amendment to the United States Constitution.

We must determine whether this error requires reversal of the

---

[1]Detective Morrissey testified that: "Mr. King stuck his head out the door and said, What are you looking for? I told him I was looking for two rocks for $40 . . . two for 30, is actually what I was looking for . . . [t]wo $20 rocks for $30."

defendant's conviction. Here, though the defendant failed to object despite the fact that the United States Supreme Court had previously decided *Crawford* v. *Washington*, 541 U.S. 36 (2004), we review the error to determine whether it was harmless beyond a reasonable doubt, as we are required to do by the Supreme Judicial Court's recent decision in *Commonwealth* v. *Vasquez*, 456 Mass. 350 (2010). Thus, our inquiry is whether the admissible evidence allows us to conclude "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman* v. *California*, 386 U.S. 18, 24 (1967). See *Commonwealth* v. *Morales*, 76 Mass. App. Ct. 663, 665-667 (2010) (comprehensive review of standard applicable to review of preserved constitutional error).

Here, Detective Morrissey, an officer with approximately twelve years of experience in narcotics investigations, testified that he field tested the substance following the transaction's completion and obtained a positive test for cocaine. The detective was available for cross-examination. The Supreme Judicial Court has recognized a positive field test as providing evidence of the nature of a substance sufficient to render the erroneous admission of a drug certificate harmless beyond a reasonable doubt. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 831 (2009) (admission of drug certificate harmless beyond a reasonable doubt where officer engaged in controlled purchase of cocaine and conducted a field test that was positive, confirming the nature of the substance).[2] See *Commonwealth* v. *Sullivan*, 76 Mass. App. Ct. 864, 874 (2010) (positive field tests critical to determination that admission of drug certificates harmless beyond a reasonable doubt). In *Vasquez, supra* at 364, in determining that the error in the admission of the certificate was not harmless beyond a reasonable doubt, the court noted the absence of any field testing, in contrast to *Connolly*.[3] Compare *Commonwealth* v. *Fluellen*, 456 Mass. 517, 527 (2010) (noting absence of field testing in determin-

---

[2]In the absence of any objection, and in the context of an officer who is on the witness stand and available for cross-examination, we do not share the view expressed by the dissent that the officer's testimony was deficient or lacking in foundation.

[3]The case of *Commonwealth* v. *Vasquez* also noted that field testing has been categorized as "presumptive identification." *Vasquez, supra* at 364 n.15. As stated, we follow the explicit determination of *Connolly,* subsequently

ing that admission of laboratory certificates not harmless beyond a reasonable doubt); *Commonwealth* v. *Rodriguez,* 456 Mass. 578, 592 (2010) (noting lack of field testing in determination that admission of certificate not harmless beyond a reasonable doubt). We are satisfied that Detective Morrissey's positive field test "as to the chemical composition of [the] substance was so 'overwhelming' as to 'nullify any effect' " of the certificate's admission into evidence. *Commonwealth* v. *Vasquez, supra* at 363.

Also here, as in *Connolly,* the determinative element of the charge of distribution was the sale itself rather than the amount of drugs in the defendant's possession. We note as well that the drugs were produced in response to a request for crack cocaine ("rocks") and that Detective Morrissey, experienced in narcotics enforcement, testified that he observed what to him appeared to be crack cocaine. The defendant gave Detective Morrissey his telephone number upon completing the transaction, providing further evidence relevant both to the defendant's identity and to his willingness to stand behind the implied representation that he was selling what had been requested.

Accordingly, and consistent with *Connolly,* we conclude that the erroneous admission of the drug certificate was harmless beyond a reasonable doubt.

*Judgment affirmed.*

Brown, J. (dissenting). Notwithstanding this court's reliance on the fleeting reference to "field testing" in *Commonwealth* v. *Connolly,* 454 Mass. 808, 831 (2009), I think that in order to "nullify" the effect of the admission in evidence of the high probative value laboratory certificate, the so-called practice of "field testing" requires more demonstrative evidence than an officer's mere statement that he has done it.[1] I am of the opinion

cited with approval in *Vasquez, Commonwealth* v. *Fluellen,* 456 Mass. 517, 527 (2010), and *Commonwealth* v. *Rodriguez,* 456 Mass. 578, 592 (2010). See *Commonwealth* v. *Sullivan, supra.*

[1]Admittedly, defense counsel could have probed on cross-examination to ascertain the field testing protocol; however, he cannot be faulted for not having done so in light of his awareness that the Commonwealth would proffer as prima facie evidence the compelling, persuasive, inculpatory scientific laboratory certificate.-

that in the circumstances presented here I am constrained to follow the teachings of *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), and I would, therefore, reverse the defendant's conviction.