NOTICE:   Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-28

COMMONWEALTH

vs.

TAVARES K. BONNETT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Tavares K. Bonnett, was convicted in Superior Court on two indictments for trafficking of drugs in amounts between eighteen and thirty-six grams, one involving fentanyl, a class A substance, and the other cocaine, a class B substance.[1]  See G. L. c. 94C, § 32E (b) (1) & (c) (1).  On appeal, the defendant argues that affidavits in support of applications for warrants to search his car and a single-family home in New Bedford did not establish a nexus between drug dealing and either location, and thus his motion to suppress evidence should have been allowed.  The defendant further

---

[1] The jury also found the defendant guilty of unlawful possession of both fentanyl and cocaine with intent to distribute.  On the Commonwealth's motion, the trial judge dismissed those two convictions as duplicative of the trafficking convictions.

contends that certain evidentiary rulings by the trial judge were prejudicial error or error giving rise to a substantial risk of a miscarriage of justice.  We affirm.

Background.  On September 7, 2019, the clerk-magistrate of the New Bedford District Court issued two warrants authorizing police to search a single-family home on North Street (North Street address) and the defendant's car, a grey 2003 Mercedes-Benz.  The detective's affidavits supporting the applications for those search warrants were substantially similar and set forth information including the following.

A confidential informant (CI) told police that a man known as "LG" was selling fentanyl from the North Street address.  The CI reported that the CI had personally contacted LG at a certain telephone number, arranged to buy fentanyl, and then met LG at a prearranged location at which LG arrived driving a grey Mercedes with a certain license plate number.  The CI described LG as a Black male in his mid-forties with a bald head.  From the Registry of Motor Vehicles database, the affiant obtained a photograph of the registered owner of the Mercedes -- the defendant -- and showed it to the CI, who identified it as depicting LG.

During surveillance, police saw the defendant on several occasions leave the North Street address, get into the Mercedes, and drive away.  Police conducted two controlled buys in which

2

the CI bought fentanyl from the defendant, the first nearly three and one-half months before issuance of the search warrants and the second within seventy-two hours before. During each controlled buy, police saw the defendant leave from the North Street address, get into the Mercedes, and drive to a prearranged location for the sale. Each time, police provided the CI with an amount of money, searched the CI before and after the sale, monitored the CI during it, and determined that the substance that the CI bought contained fentanyl.

Police executed the search warrants on the same day they issued. From the Mercedes, police seized three cell phones and a key. From the North Street address, police seized evidence including fentanyl, cocaine, cash, a digital scale, a drug ledger, and personal papers in the defendant's name.

The defendant moved to suppress evidence, arguing that the affidavits in support of the search warrants did not establish a nexus between drug dealing and either the Mercedes or the North Street address. After a nonevidentiary hearing, the motion judge denied the motion to suppress.

At trial, the Commonwealth presented evidence that when executing the search warrant on the North Street address, police seized from an upstairs bedroom a Versace eyeglasses case that contained four plastic bags, each of which contained fentanyl, cocaine, or a mixture of the two. Police also seized cut

3

plastic bags, a digital scale, cutting agents, and a drug ledger. From various places in the bedroom, police seized personal papers in the defendant's name including his birth certificate, Social Security card, tax documents, correspondence from the Registry of Motor Vehicles, and a parking ticket. From the defendant's wallet in his pants pocket, police seized 761 dollars in cash.

The defendant testified that he lived with his stepfather in Taunton, had never even been upstairs at the North Street address, and did not own anything that police found there. He testified that he kept his personal papers in the Mercedes, and someone had taken them and put them inside the North Street address.

Discussion. 1. Denial of motion to suppress. The defendant argues that the motion judge should have suppressed the evidence found in his Mercedes and at the North Street address because the search warrant affidavits did not establish a sufficient nexus between drug dealing and either location. He also claims that the CI's information was unreliable and thus could not be used to support probable cause.

We review search warrant applications de novo. See Commonwealth v. Gosselin, 486 Mass. 256, 264-265 (2020). That review "begins and ends with the four corners of the affidavit." Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 211 (2021),

4

quoting Commonwealth v. O'Day, 440 Mass. 296, 297 (2003). A search warrant affidavit "must demonstrate probable cause to believe [1] that a particularly described offense has been, is being, or is about to be committed, and [2] that [search] will produce evidence of such offense or will help apprehend a person who the applicant has probable cause to believe has committed, is committing, or is about to commit such offense" (quotation omitted). Gosselin, supra at 265, quoting Commonwealth v. Estabrook, 472 Mass. 852, 870 (2015). The motion judge properly concluded that the affidavits in this case demonstrated probable cause that the defendant sold fentanyl, that there was a timely nexus between his sales and both the Mercedes and the North Street address, and therefore there was probable cause that police would find evidence of fentanyl distribution in both locations.

The search warrant affidavits established that the defendant was selling fentanyl. The CI reported personally having bought fentanyl from the defendant. A search warrant affidavit based on information from a confidential informant must satisfy the Aguilar-Spinelli test, which requires an affidavit to "establish the CI's basis of knowledge and veracity." Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020). Here, the Commonwealth concedes that the affidavits did not establish the CI's veracity or basis of knowledge. However,

5

"[i]ndependent police corroboration may make up for deficiencies in one or both prongs of the Aguilar-Spinelli analysis." Id. In this case, police corroborated the CI's information with two controlled buys in which the CI bought fentanyl from the defendant.[2] The fact that the first controlled buy took place nearly three and one-half months before issuance of the search warrants did not render the CI's information stale, because the second controlled buy took place within seventy-two hours of the issuance of the search warrant, and just before that second buy, police saw the defendant leave the North Street address and travel to its location in the Mercedes. See Commonwealth v. Escalera, 462 Mass. 636, 644-645 (2012); see also Ponte, supra at 83 ("Generally, [a] controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant" [quotation and citation omitted]).

The affidavits also established a timely nexus between the defendant's fentanyl sales and both the Mercedes and the North Street address. Just before each of the controlled buys, police saw the defendant leave the North Street address and drive in

_____

[2] The affidavits also stated that the defendant's criminal record listed many "arraignments," but did not say if any of the arraignments resulted in convictions or involved the seizure of contraband. As explained in Ponte, 97 Mass. App. Ct. at 82, a subsequently decided case involving a search warrant issued on the application of the same affiant as in the present case, information about a suspect's arraignments "but nothing more" adds little or nothing to probable cause.

6

the Mercedes to each prearranged location, where he sold fentanyl to the CI. That established probable cause to believe that evidence of fentanyl distribution would be found in both the Mercedes and the North Street address. See Defrancesco, 99 Mass. App. Ct. at 213 (use of car to arrive at drug sales supported reasonable inference that the car contained evidence); Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475, 482-483 (2020) (probable cause to search apartment in part because defendant left from that apartment on two occasions to sell drugs); see also Commonwealth v. Lewis, 103 Mass. App. Ct. 61, 63 (2023) (probable cause to search hotel room in part because defendant left from that room to sell drugs on one occasion).

Because the search warrant affidavits established probable cause that evidence of fentanyl distribution would be found both in the Mercedes and at the North Street address, the motion to suppress was properly denied.

2. Evidentiary rulings. The defendant finds fault with several evidentiary rulings by the trial judge. To the extent that the defendant objected to a piece of evidence, we review its admission for prejudicial error. See Commonwealth v. Brum, 492 Mass. 581, 587 (2023). Where the defendant did not object to evidence, we consider whether its admission constituted prejudicial error that gave rise to a substantial risk of a miscarriage of justice. See id.

7

a.  Police opinion testimony.  The defendant argues that three New Bedford detectives improperly testified in a "conclusory" manner about how various items they seized were related to drug distribution, contending that "there was no need" for that testimony because a State trooper gave similar testimony.

At trial the defendant did not object to that testimony, and so we consider whether it was erroneously admitted and, if so, whether the error gave rise to a substantial risk of a miscarriage of justice.  See Brum, 492 Mass. at 587.  Detectives explained how drugs were diluted with cutting agents and packaged in corner-cut plastic baggies, and that notations in a notebook were consistent with a drug ledger.  One detective noted that during the search police did not find any items commonly used to ingest narcotics.

The detectives' testimony "properly inform[ed] the jury of the significance of evidence generally" and was not "a direct comment as to [the defendant's] guilt."  Commonwealth v. Grissett, 66 Mass. App. Ct. 454, 457-458 (2006).  To the extent that the testimony was cumulative, the judge did not abuse his discretion in permitting it, particularly absent an objection.  Beyond that, where the defendant's theory was that he had never even been upstairs at the North Street address and the items found in the bedroom did not belong to him, the testimony did

8

not prejudice his defense.  Cf. Commonwealth v. Ortiz, 50 Mass. App. Ct. 304, 307 (2000) (police testimony that defendant was "runner" in drug sales improperly blurred line between percipient and expert testimony, but no substantial risk of miscarriage of justice).  No substantial risk of a miscarriage of justice arose.

b.  "Dangerousness" of fentanyl.  The defendant claims that prejudicial error occurred when a detective testified that latex gloves found at the North Street address were significant because gloves "are commonly used . . . in the packaging process of narcotics because of the . . . dangerousness of fentanyl."[3] Defense counsel objected, arguing at sidebar, "There's nothing dangerous about touching cocaine."  The judge overruled the objection, noting that "this may be an area that would be better

---

[3] In a single sentence in his brief, the defendant mentions the trial judge's instructions to the jury about certain exhibits containing narcotics.  The baggies of narcotics were displayed to the jury, and a photograph of them (was admitted in evidence.  The judge told the jury that it was his practice in all drug cases not to allow narcotics into the jury room.  Also admitted as exhibits were two sealed bags, one containing the eyeglasses case and the other containing used latex gloves. After the clerk informed the judge that the evidence bag containing the eyeglasses case had come open, the judge explained to the jury that photographs of items containing narcotics would go to the jury room instead of the items themselves.  The defendant did not object and was content with the exhibits.  Even assuming, without deciding, that the defendant preserved at trial or raised on appeal any issue about the judge's handling of exhibits containing narcotics, we discern no error.

served with cross-examination," and that he understood the detective's testimony to mean that "the gloves went more to the . . . fentanyl."  Despite the judge's invitation, the defendant did not return to the subject of the gloves on cross-examination of the detective.  We discern no abuse of discretion in the trial judge's implicit determination that the detective was qualified to opine about the significance of gloves in narcotics investigations.  See Commonwealth v. Sullivan, 76 Mass. App. Ct. 864, 874 n.11 (2010).  Especially where the defendant's theory was that the narcotics were not his, and he did not dispute that the substances found at the North Street address were illegal narcotics, there was no prejudice.[4]

c.  Use of the word "target."  The defendant moved in limine to preclude the Commonwealth from using the term "search warrant" and from referring to the defendant as the "target."  The trial judge allowed the motion as to "target," but denied the motion as to "search warrant."  The defendant argues that despite that ruling, the Commonwealth elicited testimony from a detective that improperly referred to the defendant as the "target" of the search warrant, and from a State trooper describing generally how police conduct surveillance on a person

_____

[4] We also note that defense counsel suggested "an instruction to say that we're not going to send this back to you because it could be dangerous."

10

who is the "target" of a drug investigation.[5]  See Commonwealth v. Grady, 474 Mass. 715, 719 (2016) (review for prejudicial error when issue raised in motion in limine).

While the detective was testifying about stopping the defendant's Mercedes, the prosecutor asked about police safety concerns, and the detective replied, "[w]hen we're stopping a target of a search warrant, a lot--."  The defendant objected, and the trial judge sustained the objection; the defendant moved to strike, and the trial judge struck that answer.  Both before trial and again in his final charge, the judge instructed the jury to disregard any evidence that was stricken.  Jurors are presumed to follow a judge's instructions, "including instructions to disregard certain testimony."  Commonwealth v. Silva, 93 Mass. App. Ct. 609, 615 (2018), quoting Commonwealth v. Williams, 450 Mass. 645, 651 (2008).  The judge's prompt striking of testimony referencing the defendant as the "target" of the search warrant, along with his instructions, averted any prejudicial error.  See Commonwealth v. Cortez, 438 Mass. 123, 130 (2002).

_____

[5] To the extent that the defendant complains that the search warrant affiant testified that a search warrant could be "going for a home or a vehicle . . . [or] a certain individual" and "this time it was for [the defendant]," that testimony did not run afoul of the in limine ruling because it did not use the word "target."  The trial judge overruled the objection, and we discern no prejudicial error.

As for the trooper's testimony, he used the word "target" three times, referring not to the defendant specifically but rather to explain how police conduct surveillance on an individual. The defendant objected only on the third occasion, and the trial judge responded, "Another question, please." The defendant did not move to strike the word "target." We discern no substantial risk of a miscarriage of justice as to the first two instances, and no prejudicial error in the trial judge's handling of the third instance.

d. <u>Photograph of cash and drugs</u>. The defendant contends that the trial judge abused his discretion in admitting in evidence a photograph that depicted both the cash found on the defendant's person and the baggies of narcotics found at the North Street address. The defendant argues that because those items were found in different locations, they should not have been depicted in the same photograph.

The prosecutor repeatedly elicited testimony from police witnesses explaining that items in the photograph -- the cash and the narcotics -- were not found in the same location. The detectives who found each of those items testified to where the items were found. That was sufficient to authenticate the photograph as a fair and accurate representation of both items. See <u>Commonwealth</u> v. <u>Figueroa</u>, 56 Mass. App. 641, 646 (2002); see also Mass. G. Evid § 901(a) (2024). Once the photograph was

12

properly authenticated, any argument regarding its reliability went to the weight of the evidence, not its admissibility.  See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 313 (2019).  Indeed, the defendant's counsel argued in closing that the photograph of the cash and drugs together was "misleading," and police took it to "bolster their case."

e.  Father's Day card.  The defendant argues that the prosecutor improperly cross-examined him about a photograph of the top of a dresser in the bedroom at the North Street address, which depicted items including a partially obscured greeting card bearing the words "Happy Father's."  The defendant contends that the prosecutor did not have a sufficient basis to ask him to assume that it was a Father's Day card.

On cross-examination, the prosecutor showed the defendant the photograph and asked about a framed photograph depicted on top of the dresser.  The defendant admitted that the framed photograph was taken of him and Evette Vega at a wedding but denied that he and she were ever in a romantic relationship.  Asked if he could see the words "Happy Father's" depicted on the front of the greeting card on top of the dresser, the defendant replied, "I can't make that out.  My eyes are not that good."  The following exchange ensued:

> Prosecutor:  "Do you have any reason to know why Evette Vega would have a Father's Day card on her dresser?"

13

Defendant:  "It's not my dresser.  I don't know what she has on her dresser.  She has makeup on her dresser.  I don't know why she has that there."

Prosecutor:  "Sure.  Certainly not a Father's Day card for you on that dresser; right?"

Defendant:  "No."

Prosecutor:  "Okay."

Defendant:  "I'm not her father."

The defendant objected on the ground that the prosecutor did not have a basis to ask the defendant to infer that the card said, "Happy Father's Day."  Assuming, without deciding, that it was error for the prosecutor to ask the defendant to draw that inference, the defendant cannot show prejudice.  The photograph was admitted as an exhibit at trial and it was for the jury to determine what it said.  In the context of the many other personal documents linking the defendant to that bedroom and his defense theory that he had never set foot upstairs in that house, he was not prejudiced by the questions about the greeting card.

3.  <u>Third-party culprit</u>.  During trial, the defendant moved to introduce documents showing that two years before the execution of these search warrants, another man living at the North Street address had been convicted of a drug offense.  Specifically, defense counsel asked to introduce copies of a prior conviction of the third party and a probation surrender

14

notice.[6]  The trial judge ruled that the defendant could not

introduce those documents without first calling the third party

to testify.  The defendant did not do so.

A defendant is generally allowed to "introduce evidence

that tends to show that another person committed the crime or

had the motive, intent, and opportunity to commit it" (citation

omitted).  Commonwealth v. Smith, 461 Mass. 438, 445 (2012).

See Mass. G. Evid. § 1105 (2023).  But there are limits.  The

documents that the defendant sought to introduce contained

hearsay.  "If such [third-party culprit] evidence does not fall

within a hearsay exception, we have permitted its introduction

only if, in the judge's discretion, the evidence is otherwise

relevant, will not tend to prejudice or confuse the jury, and

there are other substantial connecting links to the crime"

(quotations and citations omitted).  Commonwealth v. Bizanowicz,

459 Mass. 400, 418 (2011) (judge did not abuse discretion in

excluding police report documenting murder victim's landlord's

dispute with former tenant).  The proffered evidence "must have

a rational tendency to prove the issue the defendant raises, and

the evidence cannot be too remote or speculative" (citation

omitted).  Smith, supra at 445-446.  "Without these safeguards,

---

[6] Those documents were not marked as exhibits, and so they
are not before us.  We cannot ascertain whether the conviction
was certified, or to what offense it pertained.

15

the admission of feeble third-party culprit evidence poses a risk of unfair prejudice to the Commonwealth, because it inevitably diverts jurors' attention away from the defendant on trial and onto the third party" (quotation and citation omitted).  Commonwealth v. Steadman, 489 Mass. 372, 383 (2022).

Contrary to the defendant's present claim, the judge did not prevent the defendant from presenting evidence that the man who had lived at the North Street address two years previously could have been the third-party culprit.  Defense counsel did elicit from police witnesses that in the past police "ha[d] dealt" with the former resident, who had been the subject of a drug investigation in 2017.  In closing argument, defense counsel marshalled evidence to tie that former resident to the North Street address.  Given the turnover of products in a drug distribution business, we discern no abuse of discretion in the judge's precluding the defendant from introducing documentary evidence of the former resident's criminal history two years before.  Based on the incomplete record before us, we cannot say

that the documents proffered would have added anything more to the defense.

Judgments affirmed.

By the Court (Massing, Singh & Grant, JJ.[7]),

Clerk

Entered:   July 29, 2024.

---

[7] The panelists are listed in order of seniority.