NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-348

COMMONWEALTH

vs.

GERALD EDDINGTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury found the defendant guilty of assault and battery (count one), assault on a family or household member (count two), assault and battery with a dangerous weapon (count three), armed assault in a dwelling (count four), and mayhem (count five).  Subsequently, the defendant was convicted after a jury-waived trial of sentencing enhancements on counts three through five.

The defendant raises several claims on appeal:  (1) he is entitled to required findings of not guilty on count two due to an error on the verdict slip, and count four due to the insufficiency of the evidence, (2) the trial judge abused her discretion in not excusing jurors exposed to extraneous

influence and in rendering several evidentiary decisions, and (3) his convictions on counts one and three are duplicative of his conviction on count five, as they were all based on the same conduct, an argument to which the Commonwealth concedes.[1]  We reverse the convictions on counts one and three as they are duplicative of count five.[2]  In all other aspects, we affirm.

Background.  We summarize the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Lopez, 484 Mass. 211, 211 (2020).  The victim lived in Springfield with her four children.  The defendant is the father of one of those children.  The defendant and the victim had known each other for approximately sixteen years and had been in a relationship, but not for the five years prior to the trial.  Although the defendant rarely visited the victim's home and never visited

---

[1] The Commonwealth concedes as much, and having conducted an independent examination of the issue, we agree.  See Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010).

[2] Although we reverse the judgments as to counts one and three, we do not remand for resentencing.  The defendant received a twenty-year sentence followed by a five-year term of probation, and the trial judge clearly indicated an intent "to sentence [the defendant] to the 20 years on the mayhem charge" and subsequent "probation on the armed assault in a dwelling" charge, both of which we affirm.  See Commonwealth v. Mattier (No. 2), 474 Mass. 261, 277 (2016) ("[w]e do not remand to the Superior Court for resentencing, where [the defendant]'s sentence is unlikely to be affected by our decision").

with their shared daughter, he and the victim did occasionally communicate by telephone.

One night while the victim was at work, the defendant entered the victim's home, having been let in by one of the victim's daughters who resided there. The defendant entered the victim's bedroom, and the daughter called the victim to inform her that the defendant was at the house. When the victim arrived home, she found the defendant in the bathroom where he was rambling, pacing, and mumbling incoherently. The defendant called the police.

When the police arrived, they took no action, as the victim agreed to drive the defendant to his own home. The defendant's aberrant behavior persisted during the drive, prompting the victim to stop at a gas station and attempt to drop him off there. The defendant began yelling and jumped on the hood of the car. After he reentered the car, the victim drove him to his home. However, the defendant began kicking the car and refused to exit it. Ultimately, the victim drove back to her own home, leaving the defendant pacing in her driveway when she went inside.

Subsequently, the defendant entered the victim's bedroom, began talking at the victim, then said he would leave. The defendant left the room, and the victim lay down in her bed. The defendant reentered the room and dove onto the bed. The

victim fell off the bed, and the defendant dove onto her, stabbing her on her arms and face with a pocketknife. One of the victim's daughters witnessed the stabbing and called 911. The victim passed out; when she awoke, she saw a pocketknife on the floor which she recognized as the defendant's. After the defendant left, paramedics responded, finding the victim with multiple lacerations on her arms and legs and a significant laceration on her forehead.

Discussion. 1. Sufficiency of the evidence of count four. The elements of armed assault in a dwelling are (1) entry of a dwelling while armed, (2) an assault on someone in the dwelling, and (3) specific intent to commit a felony. See Commonwealth v. Putnam, 75 Mass. App. Ct. 472, 476-477 (2009). The defendant argues that his entry into the victim's house was consensual and therefore not unlawful. See id. at 477. We disagree.

Viewing the evidence in the light most favorable to the Commonwealth, the jury could have permissibly inferred that the defendant's entry was unauthorized. See Commonwealth v. Lattimore, 378 Mass. 671, 677-678 (1979); Commonwealth v. Oviedo, 102 Mass. App. Ct. 78, 79-80 (2023). The victim had not been in a romantic relationship with the defendant for five years. He rarely came to the victim's house, and he never visited with their shared daughter. The victim had spent much

4

of the evening attempting to remove the defendant from her home by driving him to his own home. And immediately prior to the entry, the victim left the defendant in her driveway, entered her home, checked on her sleeping children, and changed into her pajamas to go to sleep. This evidence was sufficient for the jury to infer that the entry was unauthorized.[3]

2. Evidentiary rulings. a. Admission of 911 call. The defendant challenges the admission into evidence of the 911 call the victim's daughter made to the police after seeing the defendant stab her mother. While defense counsel did "not dispute that a large majority of the 911 call constitutes an excited utterance," counsel did object to the daughter's statement, "I need Gerald Eddington arrested right now." We discern no error.

An excited utterance is admissible "if (1) there is an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer, and (2) if the declarant's statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought" (citation omitted). Commonwealth v. Alcantara, 471 Mass. 550,

_____

[3] The defendant does not challenge the sufficiency of the evidence to support any other element of the charge, thus waiving any challenge as to those elements. See Commonwealth v. Anderson, 445 Mass. 195, 214-215 (2005); Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

558 (2015).  "[A] judge's discretionary decision constitutes an abuse of discretion where . . . the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The daughter's statement was based on her own observations made while witnessing the defendant stab her mother.  See Commonwealth v. King, 436 Mass. 252, 255 (2002).  The recording permits the reasonable inference that this statement was a spontaneous reaction to seeing the stabbing.  We conclude that the judge did not abuse her discretion in finding that the statement qualified as an excited utterance.[4]

b.  Evidence of defendant's prior bad acts.  The defendant claims that the Commonwealth introduced multiple episodes of the defendant's prior bad acts, causing undue prejudice to the defendant.  The defendant points to two statements suggesting his history of incarceration.  In response to the prosecutor's direct-examination question, "[F]or about how long were you

---

[4] For the first time on appeal, the defendant argues that the daughter's statement should have been excluded because its probative value is substantially outweighed by the risk of unfair prejudice.  See Mass. G. Evid. § 403 (2025).  The judge did not act outside the reasonable range of alternatives by failing to, sua sponte, exclude the probative evidence of the 911 call, thus there was no error in its admission.

6

romantically involved with [the defendant]?", the victim replied, "Off and on whenever he wasn't in jail." And in response to defense counsel's cross-examination question about the defendant spending time with his daughter, the victim replied, "Mr. Eddington never spent time with his daughter when he came home this time." Neither response triggered an objection nor a motion to strike.[5]

We conclude that the statements were admitted in error, but because the defendant did not object or move to strike the evidence, we review to determine whether the admitted statements created a substantial risk of a miscarriage of justice. See Commonwealth v. Sullivan, 76 Mass. App. Ct. 864, 871 (2010). "Evidence of a defendant's prior or subsequent bad acts is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). Although

_____

[5] The defendant also points to the victim's stricken testimony that she had been "beat[en] . . . for years" as accumulating to prejudice. "[I]n response to the jury's exposure to inadmissible evidence, the judge may correctly rel[y] on curative instructions as an adequate means to correct any error and to remedy any prejudice to the defendant" (quotation and citation omitted). Commonwealth v. Torres, 86 Mass. App. Ct. 272, 280 (2014). The judge struck the victim's statement, instructed the jury to disregard it, and again instructed the jury at the close of trial to "not consider any question and answer that [she] ha[d] struck from the record." "Jurors are presumed to follow a judge's clear instructions and disregard [stricken] testimony," Commonwealth v. Auclair, 444 Mass. 348, 358 (2005), and so we find no prejudice here.

7

the prosecutor's question attempted to show the relationship between the defendant and the victim, the answer which referenced the defendant being in jail had very little, if any, relevance. Even if there were some slight relevance, such evidence should "not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Almeida, 479 Mass. 562, 568 (2018), quoting Crayton, supra. The answers should have been stricken.

However, the properly admitted evidence against the defendant was strong, including the testimony of two eyewitnesses and DNA evidence tying the defendant to the pocketknife used in the assault. We conclude that both phrases indicating that the defendant had been previously incarcerated did not create a risk that the trial would have been different without the testimony. See Commonwealth v. Azar, 435 Mass. 675, 687 (2002). Accordingly, there was no substantial risk of a miscarriage of justice.

c. Exclusion of false allegations of the victim. The defendant argues that the trial judge committed reversible error by precluding him from questioning the victim about allegedly false allegations she made about her mother threatening and hurting her. There was no error.

"The specific acts of misconduct of a witness, not material to the case in which she testifies, are ordinarily inadmissible

8

on cross-examination to impeach her credibility." Commonwealth v. Martin, 467 Mass. 291, 311 (2014); see Mass. G. Evid. § 608 (b) (2025).[6]  Additionally, judges have "broad latitude to direct the course of a trial" via limiting cross-examination, Commonwealth v. Vardinski, 438 Mass. 444, 451 (2003), with express "discretion to limit questions that involve collateral issues and questions where the connection to the evidence of bias is too speculative," Commonwealth v. Chicas, 481 Mass. 316, 320 (2019).  The judge's restriction was permissible and within her discretion; even if it were not, as the defendant made no offer of proof that the victim's allegations were false, he cannot show that the limitation was prejudicial.  See Commonwealth v. Syrafos, 38 Mass. App. Ct. 211, 219 (1995).

d.  Failure to remove a juror.  The defendant claims the trial judge denied her an impartial jury by failing to remove a juror who witnessed an altercation outside the court room concerning a party to the case.  The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant a trial before an impartial jury, and the presence of a single partial

---

[6] The narrow exceptions to this general rule do not apply because the witness was not a police officer or a victim of sexual assault.  See Matter of a Grand Jury Investigation, 485 Mass. 641, 651-652 (2020); Commonwealth v. Bohannon, 376 Mass. 90, 94 (1978), S.C., 385 Mass. 733 (1982).

juror violates this right.  Commonwealth v. Colon, 482 Mass. 162, 167 (2019).  Extraneous influence includes information not presented at trial, and a juror's exposure to such influence "present[s] a serious question of possible prejudice" (quotation and citation omitted).  Id.  "If a trial judge learns of such an [extraneous} influence, the judge must determine whether the jurors remain impartial and, if not, what remedy is required."  Id. at 168.  The trial judge's determination regarding the impartiality of a juror after questioning by the judge is granted "great deference" on appeal and will be set aside only if clearly erroneous or upon a showing of a clear abuse of discretion.  Id.

Here, the trial judge did everything required.  After learning that jurors may have seen an altercation outside the court room, she questioned all of the jurors, and then made a finding that the statements of the juror at issue were credible and that all of the jurors remained indifferent.[7]  There is nothing to suggest that her determinations were clearly erroneous.  Colon, 482 Mass. at 168.

---

[7] Defendant's trial counsel did not seek to remove any juror because of any inconsistencies between their reports.  In fact, trial counsel stated that any discrepancies between the jurors' reports were a "semantics challenge."  Any appellate argument that any of the jurors should have been excluded is waived.

10

3. Verdict slip on count two. The indictment on count two charged the defendant with "assault or assault and battery on family or household member." The judge instructed the jury on the latter charge but not on the lesser included offense of assault. The verdict slip on count two was only captioned "assault on a family or household member" entirely omitting any reference to assault and battery. There was no objection to the judge's jury instructions, and prior to the verdict slip going into the jury room, defense counsel expressed satisfaction with the slip.

There is no merit to the defendant's claim that he is entitled to a required finding of not guilty on count two. When an unpreserved claim of error relates to an element of an offense, a new trial is not necessary where the omitted or erroneously stated element can be ineluctably inferred from the evidence. See Commonwealth v. Desiderio, 491 Mass. 809, 816 (2023). Here, while the judge did not instruct the jury on assault regarding count two, she did instruct the jury regarding assault in conjunction with count four.

Although the judge should have instructed on the lesser included offense of assault in conjunction with count two, we conclude there was no substantial risk of a miscarriage of

11

justice where the jurors were instructed on the elements of assault as part of the instructions to count four.

Conclusion. On the indictments charging assault and battery (count one) and assault and battery with a dangerous weapon (count three), the judgments are reversed, the verdicts are set aside, and the indictments are to be dismissed. On the indictments charging assault on a family or household member (count two), armed assault in a dwelling (count four), and mayhem (count five), the judgments are affirmed.

<u>So ordered</u>.

By the Court (Desmond, D'Angelo & Smyth, JJ.[8]),

Clerk

Entered: February 5, 2026.

---

[8] The panelists are listed in order of seniority.